```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
MONZUR MORSHED,                                              :
                                              Plaintiff,     :
                                                             :        16 Civ. 2862 (LGS)
                  -against-                                  :
                                                             :        OPINION AND ORDER
ST. BARNABAS HOSPITAL, et al.,                               :
                                              Defendants.    :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/10/2017

LORNA G. SCHOFIELD, District Judge:

In April 2016, Plaintiff Monzur Morshed filed this action against St. Barnabas Hospital and nine individual Defendants, alleging that he was subjected to sexual harassment, a hostile work environment and discrimination in violation of federal, state and local law. Currently before the Court are Defendants' assertions of privilege as to ten representative documents that the Court has reviewed *in camera*. Defendants argue that the documents are privileged under the self-critical analysis privilege, peer review privilege and quality assurance privileges. For the reasons discussed below, Defendants' assertions of privilege as to the ten representative documents are overruled.

## I.  BACKGROUND

On September 30, 2016, Defendants were directed to produce a privilege log and Plaintiff was ordered to identify ten entries for the Court to adjudicate. The intention was that rulings on these ten documents will allow the parties to extrapolate which documents are privileged and which are not, and for discovery to proceed. Following a second conference regarding the selection of the ten documents, Plaintiff identified documents and Defendants filed a letter and memorandum of law, and submitted a privilege log and the documents ex parte for *in camera* review. By Order dated December 21, 2016, Defendants were directed to supplement their

memorandum of law and Plaintiff was ordered to file a memorandum of law in response to Defendants' memorandum. Defendants filed a supplemental memorandum of law on January 3, 2017. Plaintiff did not submit a memorandum of law.

The ten documents identified include emails between and among physicians who supervised and evaluated Plaintiff during his residency, discussing Plaintiff's performance in the residency program; hospital preceptor evaluations of Plaintiff; an evaluation of Plaintiff's performance in one of his rotations; a New York College of Osteopathic Medicine Educational Consortium Annual Trainee Assessment for Plaintiff; and an email from a medical placement company requesting a reference from the St. Barnabas hospital for Plaintiff. Defendants assert that the all of the documents are protected from discovery on the same grounds: Rule 501 of the Federal Rules of Evidence; Rule 26 of the Federal Rules of Civil Procedure; the peer review privilege and quality assurance privilege; N.Y. Public Health Law § 2805-m; N.Y. Education Law § 6527; the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. § 1111; the Patient Safety and Quality Improvement Act ("PSQIA"), 42 U.S.C. § 299b-21 to b-26; the critical self-analysis privilege; and N.Y. Comp. Codes R. & Regs. tit. 10, § 405.4.

## II.     DISCUSSION

The ten documents submitted for review *in camera* are subject to disclosure and not privileged on the grounds asserted. Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportionatal to the needs of the case."

### A.     New York Education Law § 6527 and Public Health Law § 2805-m

Defendants' argument that the ten documents at issue are privileged and protected from disclosure pursuant to New York Education Law §6527 and Public Health Law § 2805-m fails as

these laws are inapplicable. This action is brought pursuant to both federal civil rights laws and state and city human rights laws. "[C]ourts consistently have held that the asserted privileges are governed by the principles of federal law" where the action is in federal court and the evidence sought is relevant to both federal and state law claims. *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987); *accord Steinberg v. Mount Sinai Med. Ctr., Inc.*, No. 12 Civ. 51, 2014 WL 1311572, at * 2 (S.D.N.Y. Mar. 31, 2014).

### B. Federal Rule of Evidence 501, Federal Common Law and Federal Rule of Civil Procedure 26

Defendants appear to argue for recognition of a peer review privilege, quality assurance privilege and self-critical analysis privilege recognized by state law, invoking Federal Rule of Evidence 501 and "the strong policy of comity between federal and state courts." This argument is unavailing.

Rule 501 provides that "[t]he common law -- as interpreted by United States courts in the light of reason and experience -- governs a claim of privilege unless any of the following provides otherwise:  the United States Constitution; a federal statue; or rules prescribed by the Supreme Court." Fed. R. Evid. 501. In determining federal privilege law, Defendants argue that Rule 501 affords a district court "flexibility to develop rules of privilege on a case-by-case basis."

"The policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one." *Jaffee v. Redmond*, 518 U.S. 1, 12–13 (1996). However, the strong policy of comity is not dispositive. "While as a matter of comity federal courts accord deference to state-created privileges, such privileges are construed narrowly, and must yield when outweighed by a federal interest in presenting relevant

3

information to a trier of fact." *United States v. 31-33 York St.*, 930 F.2d 139, 141 (2d Cir. 1991). Although Rule 501 "manifests a congressional desire not to freeze the law of privilege but rather to provide the courts with flexibility to develop rules of privilege on a case-by-case basis," the Supreme Court has cautioned against recognizing a privilege "in an area where it appears that Congress ha[d] considered the relevant competing concerns but has not provided the privilege itself." *Univ. of Pennsylvania v. EEOC*, 493 U.S. 182, 189 (1990).

In weighing the relevant factors, some courts have used a balancing test to determine claims of privilege based on state laws and where no federal rule governs the privilege asserted. Courts in the Eastern District of New York have outlined a four factor test balancing:

> 1) the need for the information to enforce federal substantive and procedural policies; 2) the importance of the state policy that supports the rule of privilege and the likelihood that recognizing the privilege will advance the state policy; 3) the special need of the litigant who seeks the information; and 4) and adverse impact on local policy if the privilege is not recognized.

*Sabharwal v. Mount Sinai Med. Ctr.*, No. 09 Civ. 1950, 2011 WL 477693, at *2 (E.D.N.Y. Feb. 4, 2011).

Here, Defendants invoke the peer review privilege, the quality assurance privilege and the self-critical analysis privilege. These do not appear to be separate privileges.[1] "Medical peer review privilege evolved out of the broader self-critical analysis privilege, and provides a specific incarnation of that privilege for medical situations." *Francis v. United States*, No. 09

---

[1] New York Law, which Defendants argue serve as a basis for Defendants' arguments, protects from disclosure proceedings and records "relating to performance of a medical or a quality assurance review function or participation in a medical . . . malpractice program." N.Y. Educ. L. § 6527(3). As one New York court explained, "[t]he purpose of the discovery exclusion is to enhance the objectivity of the review process and to assure that medical review committees may frankly and objectively analyze the quality of health services rendered by hospitals." *Logue v. Velez*, 92 N.Y.2d 13, 17 (N.Y. 1998) (internal quotation marks and citation omitted).

Civ. 4004, 2011 WL 2224509, at *4 (S.D.N.Y. May 31, 2011) (citation omitted).  "[T]o the extent peer review privilege is inapplicable, self-critical analysis privilege is also inapplicable." *Id.*  Because Defendants are invoking the self-critical analysis privilege in a health care-related setting, medical peer review privilege, self-critical analysis privilege and quality assurance privilege are equivalent for the purposes here.

The Supreme Court arguably has already determined that a federal peer review privilege does not exist.  In *University of Pennsylvania*, the Court held that neither the federal common law nor the First Amendment warranted the recognition of a peer review privilege over the tenure review files in an employment discrimination case.  493 U.S. 182 (1990); *accord Sabharwal*, 2011 WL 477693, at *4.

Defendants also argue that recognition of a federal privilege will support important federal policy interests, namely promoting public safety through quality assurance and peer review.  Defendants' citation to federal laws -- the HCQIA and the PSQIA -- does not aid their argument.  In enacting the HCQIA, Congress did not create a privilege for medical peer review, despite recognizing the need to incentivize physicians to engage in effective professional peer review and granting officials who conduct peer reviews qualified immunity where statutory standards are met.  *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 560 (S.D.N.Y. 1996).  Also, "the HCQIA specifically denies immunity under the Civil Rights Act for participants in peer review proceedings."  *Id.*  Rather than supporting recognition of the privilege, the passage of HCQIA shows "that Congress accorded more weight to vindication of civil rights than to the interests in the confidentiality of the peer review process."  *Id.* at 560–61.  For these reasons, the HCQIA does not provide a basis to recognize a peer review privilege here.  *See id.* at 561 (holding the court was "not free to recognize a privilege for medical peer review materials" where a physician

brought federal race discrimination allegations against a hospital, in light of above considerations).

The PSQIA also affords no basis for application of a privilege to the ten documents at issue. The PSQIA creates a federal privilege for "any data, reports, records, memoranda, analyses (such as root causes analyses), or written or oral statements" that a health care provider assembles and reports to a patient safety organization ("PSO"). 42 U.S.C. §§ 299b-21(7), 299b-22(a). Defendants do not argue that the PSQIA is applicable by its terms, rather appear to argue that the PSQIA, like the HCQIA, lends support to the federal recognition of a peer review privilege because it encourages a culture of safety and quality by providing confidentiality. Here too, Congress' refusal to recognize a peer review privilege cautions against judicial recognition of the privilege. *See Univ. of Pennsylvania*, 493 U.S. at 189.

In applying the balancing test outlined in *Sabharwal* to this case, Plaintiff's need for the documents to enforce an important federal substantive policy outweighs any theoretical chilling effect that disclosure would have on critical analysis of physician performance.[2] 2011 WL 477693, at *2. Plaintiff asserts that he was subjected to discrimination and a hostile work environment on account of his age, religion, race and national origin. The emails and evaluations submitted *in camera* that Defendants seek to protect from disclosure are relevant to Plaintiff's discrimination case. For the same reasons, Defendants have not shown that the burden of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

---

[2] Additionally, some of the documents -- namely the intern preceptor evaluation forms -- appear to be signed by Plaintiff, indicating that he received a copy of the evaluation, thus overcoming any claim of confidentiality.

### III. CONCLUSION

For the foregoing reasons, Defendants' assertions of privilege as to the ten documents reviewed *in camera* are OVERRULED.  Defendants shall produce the documents at issue to Plaintiff no later than February 8, 2017, and the parties shall apply the reasoning of this opinion to the remaining documents.  If disputes over whether disclosure of other individual documents remain, the parties shall raise the disputes promptly with the Court.

Dated: February 10, 2017
        New York, NY

                                    _____
                                    **LORNA G. SCHOFIELD**
                                    **UNITED STATES DISTRICT JUDGE**